```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
DANIEL DRUMMOND,              :
                              :
          Petitioner,         :
                              :    Civil No. 3:11CV1931(AWT)
v.                            :
                              :
UNITED STATES OF AMERICA,     :
                              :
          Respondent.         :
                              :
------------------------------x
```

**RULING ON MOTION PURSUANT TO 28 U.S.C. § 2255**

Petitioner Daniel Drummond has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The petitioner claims that he is entitled to relief because (1) his trial counsel provided ineffective assistance during the sentencing proceedings by failing to seek relief under the safety valve provision and by failing to correct a mistake in the presentence report ("PSR"), (2) the court relied on inaccurate information when imposing the petitioner's sentence, and (3) the 500:1 ratio of MDMA to marijuana was greater than necessary to serve the purposes of sentencing.  For the reasons set forth below, the petitioner's contentions are without merit, and the motion is being denied without a hearing.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On February 28, 2007, a federal grand jury sitting in Hartford returned a one-count Indictment against the petitioner, charging him with possession with intent to distribute MDMA ("ecstasy").  On March 2, 2007 the petitioner pled not guilty to the charge in the Indictment.  Subsequently, on April 26, 2007, a federal grand jury sitting in Hartford returned a two-count Superseding Indictment against the petitioner, charging him with engaging in a conspiracy to distribute MDMA and with possession with intent to distribute MDMA.

Five days prior to the start of trial, on August 15, 2007, the petitioner pled guilty to Count Two of the Superseding Indictment, which charged him with possession with the intent to distribute MDMA in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.  At the time of the guilty plea, the petitioner entered into a plea agreement.  Among other things, the plea agreement contained a stipulation that 32,000 ecstasy tablets were involved in the offense, but the government reserved the right to argue that the quantity exceeded 32,000 tablets should the petitioner seek a safety valve reduction under U.S.S.G. § 5C1.2.  The parties also entered into the following Guidelines stipulation:

> The Government and the defendant agree that, under the drug equivalency tables set forth in U.S.S.G. § 2D1.1, the total quantity of MDMA that the defendant

>  possessed with the intent to distribute is
>  approximately equivalent to the range for marijuana
>  set forth at a base offense level of 34 (24,000 to
>  80,000 MDMA tablets, converted to 3,000 to 10,000
>  kilograms of marijuana).  The parties also agree that
>  three levels should be subtracted under U.S.S.G.
>  § 3E1.1 for acceptance of responsibility, as noted
>  above.  Based on the information available to the
>  parties at this time, including information from the
>  defendant himself, it appears that the defendant falls
>  into Criminal History Category I.  At an adjusted
>  offense level of 31 and a Criminal History Category I,
>  the defendant falls into a guideline incarceration
>  range of 108-135 month[s] (sentencing table) and a
>  guideline fine range of $15,000 to $150,000 (U.S.S.G.
>  § 5E1.2).

(Daniel Drummond Plea Agreement at 4).  Additionally, the petitioner reserved the right to attempt to qualify for the two-level reduction in his offense level under the safety valve provision, and the government reserved the right to argue in support of additional enhancements to the adjusted offense level if the petitioner sought safety valve relief.

Between the time of his guilty plea and sentencing, the petitioner met with the government for a safety valve proffer session and provided information about his offense conduct.  The petitioner's trial counsel was present during the proffer session.

The PSR prepared by the Probation Office calculated the same total offense level and adjusted offense level as that contained in the Guidelines stipulation in the petitioner's plea agreement.  For Criminal History Category I and an adjusted

offense level of 31, the PSR calculated a Guidelines incarceration range of 108-135 months. However, the PSR mistakenly stated that the offense of conviction was a class B felony, instead of a class C felony, and therefore stated that probation was not an authorized sentence.

Prior to sentencing, the government filed a sentencing memorandum and the petitioner filed two sentencing memoranda. The government's sentencing memorandum noted that "[t]he defendant has indicated to the Government that he is not seeking any reduction under the safety valve provision set forth at U.S.S.G. § 5C1.2 and that he agrees with the PSR's calculation that the guideline range in this case is 108-135 months' incarceration." (Gov't Sentencing Mem. at 9). In the petitioner's sentencing memoranda, he argued for a sentence below the Guidelines range stating, <u>inter</u> <u>alia</u>, that a sentence within the range would be disparate from the sentences imposed on his co-conspirators. Additionally, the petitioner confirmed that he was not seeking a reduction under the safety valve provision.

At the petitioner's sentencing on August 28, 2009, the petitioner argued for a sentence of imprisonment below the Guidelines range--specifically, a sentence of time served--and did not argue for a reduction pursuant to the safety valve provision. After hearing from the petitioner, his counsel, the

petitioner's father, and the government, the court sentenced the petitioner to a 108 month term of incarceration and a five year term of supervised release.

The petitioner filed a timely notice of appeal on September 10, 2009. On appeal, the petitioner was not represented by his trial counsel, but was instead represented by the retained counsel who is representing the petitioner in this habeas proceeding. The petitioner raised two claims of error on appeal: (1) that the court erred in not applying the safety valve reduction, and (2) that the PSR incorrectly stated that the petitioner was ineligible for probation.

**II.  LEGAL STANDARD**

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 only in limited circumstances. A "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §

2255(b).  However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense."  Machibroda v. United States, 368 U.S. 487, 495 (1962).  In making its determination regarding the necessity of a hearing, a district court may draw upon its personal knowledge and recollection of the case.  See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990).  A § 2255 petition, or any part of it, then, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

**III. DISCUSSION**

    **A.    Ineffective Assistance of Counsel**

The petitioner contends that his trial counsel was constitutionally ineffective by (1) failing to seek relief under the safety valve provision in U.S.S.G. § 5C1.2, and (2) failing to notice an error in the PSR regarding whether probation was an authorized sentence for the offense of conviction.  Both contentions lack merit.

To prevail on an ineffective assistance of counsel claim, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'"  United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).  "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"  Id. at 560 (quoting Strickland, 466 U.S. at 696-67) (internal citations omitted).

        ***1.   Waiver of Right to Seek Safety Valve Relief***

    The petitioner contends that his trial counsel provided ineffective assistance by failing to seek relief under the safety valve provision.  He argues that the failure to do so prejudiced him because had he been found eligible for safety valve relief, he would have received a two-point reduction in his adjusted offense level.

    In order to be eligible for the safety valve provision, a defendant must satisfy five criteria:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f); see also U.S.S.G. § 5C1.2.  If the court determines that the defendant meets the five criteria, the offense level is reduced by two points pursuant to U.S.S.G. § 2D1.1.

   The petitioner's claim that his counsel's failure to seek relief under the safety valve provision constituted ineffective assistance of counsel is without merit.  Trial counsel and the petitioner knew that there was a risk associated with seeking relief under the safety valve provision. Specifically, depending on the court's ruling as to whether the petitioner satisfied the safety valve criteria, the petitioner could be exposed to a Guidelines calculation higher than the one set forth in the plea

agreement. During the safety valve proffer session, counsel for the government advised the petitioner:

> [E]verything you say will be used against you. That-- and the reason I say it that way is because when you sit in a proffer session that is intended for cooperation, sometimes there's a proffer agreement in writing which says that everything you say will not be used against you under--unless certain things happen and as long as you're truthful. That's not what this is.
>
> Safety valve, everything you say will be taken into account at sentencing, will be turned over to the Court, and the Court will have, for better or for worse or whatever, to consider at sentencing. Doesn't mean it--that the Court will use it against you. It just means that there's no protection that what you say can't be used against you.

(Safety Valve Proffer Session Tr. (Doc. No. 1-3) 9:14-10:4). The petitioner was also advised in his plea agreement that if he sought a reduction under the safety valve provision, the government might seek additional enhancements to the petitioner's adjusted offense level.

The petitioner, his counsel, and counsel for the government specifically discussed two situations where seeking relief under the safety valve could lead to an increase in the Guidelines range. First, the petitioner and his counsel were informed that in examining whether the petitioner was "an organizer, leader, manager, or supervisor of others in the offense," it was possible that the court would determine that the petitioner was in fact a supervisor, and the petitioner could then receive an

enhancement under Guidelines § 3B1.1 for his role in the offense.  Counsel for the government stated:

> So it would be essentially three possibilities.  One would be you qualify because you weren't a supervisor of other people; two would be you don't qualify because you were a supervisor, but there would be no role enhancement; and the third would be that you don't qualify and there would be a role enhancement.  And that is entirely up to the Court.  I mean, that's going to be the Court's decision.

(Safety Valve Proffer Session Tr. 5:24-6:7).  Counsel for the government also told the petitioner that "[i]f you believe the testimony of the witnesses that we're going to offer at your trial then that would establish that you were supervising other people." (Safety Valve Proffer Session Tr. 7:1-7:4).  Thus, the petitioner and his counsel knew that there was in fact an evidentiary basis for a finding that the role enhancement was appropriate and that he was ineligible for safety valve relief.  In addition, at the prompting of the petitioner's trial counsel, counsel for the government discussed the fact that if the petitioner answered his questions truthfully, the quantity of ecstasy tablets for which the petitioner was responsible could increase.  Counsel for the government stated:

> [I]n the plea agreement we agreed to a specific quantity.  That was based on the 32,000 pills that were seized from you.  That was it.  In other words, our plea agreement was based on the 32,000 pills that were seized from you.
>
> If we had gone to trial against you, which we were about to, the witnesses would have talked about a lot

> more than 32,000 pills that were seized from you, and the quantity would have gone up. And that's what I'll be asking you about, in addition to the 32,000 pills.
>
> So there is a possibility that if you're truthful to the answers--truthful in the answers to my questions, that the quantity would go up from 32,000. How high it would go up, I don't know. . . .

(Safety Valve Proffer Session Tr. 10:21-11:12).

The government has submitted an affidavit from the petitioner's trial counsel, Attorney Brian J. Woolf, in which Attorney Woolf avers that he discussed with the petitioner "the propriety of . . . pursuing 'Safety Valve' pursuant to U.S.S[.]G. § 5C1.2 . . . ." (Woolf Aff. (Doc. No. 6-1) at ¶ 3). Attorney Woolf also avers that based on the risks associated with pursuing safety valve relief, the petitioner "instructed [him], in writing, not to pursue 'Safety Valve' at Sentencing under any circumstances." (Woolf Aff. (Doc. No. 6-1) at ¶ 5).

Thus, the decision not to pursue relief under the safety valve provision at sentencing was a strategic one made by the petitioner and his counsel. Although the petitioner and his habeas counsel now apparently believe that the prior decision not to seek the safety valve reduction was incorrect, that difference of opinion does not mean that the performance of petitioner's trial counsel was constitutionally deficient. As the Supreme Court has stated, "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."

-11-

Strickland, 466 U.S. at 689. There was a more than reasonable basis for trial counsel's decision not to seek safety valve relief at the petitioner's sentencing. His failure to do so did not fall below the objective standard of reasonableness and therefore did not constitute ineffective assistance.

### 2. *Failure to Correct Error in PSR*

The petitioner contends that his trial counsel provided ineffective assistance by failing to correct the section of the PSR which stated that the offense of conviction was a class B felony so the petitioner was ineligible for probation. He argues that failure to do so prejudiced him because it is possible that the court would have imposed a lesser term of imprisonment had it known that the petitioner was eligible for probation.

Even if the court were to find that the petitioner's trial counsel's failure to correct the error in the PSR fell below an objective standard of reasonableness, the petitioner's claim fails because he was not prejudiced by the mistake. At the time the petitioner was sentenced, he had been incarcerated in federal custody for approximately 30 months, and trial counsel argued that the petitioner should be sentenced to time served. If the court had sentenced the petitioner to time served, the petitioner would not have served a further period of incarceration after sentencing, which would have been the

functional equivalent of receiving a sentence of probation. However, the court determined that time served was not an appropriate sentence and that a Guidelines sentence "at the bottom of the range [was] sufficient but not greater than necessary to reflect the seriousness of the offense . . . and to provide a sentence that constitute[d] just punishment . . . ." (Sentencing Tr. 40:22-41:2).  Thus, the fact that the PSR incorrectly stated that the petitioner was not eligible for probation did not prejudice the petitioner because the petitioner's trial counsel effectively argued for a sentence of probation and the court rejected that argument.

B.  **Disparate Sentences**

The petitioner contends that the court erred by relying on inaccurate information about similar defendants when imposing sentence.[1]  The petitioner did not raise this claim on direct appeal.

"[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003).  In order to show cause, the

---

[1] The court notes that the petitioner raised this argument in a document titled "First Amendment to Petition under 28 U.S.C. § 2255" and that the document is supposedly a "Brief in Support of Ground Two."  The original habeas petition only contained one ground for relief.  While the brief begins by addressing the petitioner's safety valve argument, it then switches to the instant argument that the court relied on inaccurate information when it imposed the petitioner's sentence.

petitioner must demonstrate either that (1) he was "represented by counsel whose performance [was] . . . constitutionally ineffective under the standard established in Strickland v. Washington"; or (2) "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1984). Such external factors include "that the factual or legal basis for a claim was not reasonably available to counsel, or that some 'interference by officials' made compliance impracticable . . . ." Id. (internal citation omitted).  In order to establish prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Here, the petitioner has not demonstrated, or even argued, that his failure to raise on appeal the argument that the court relied on inaccurate information in imposing sentence was due to his trial counsel's or his appellate counsel's constitutionally ineffective performance.  Nor has the petitioner argued or demonstrated that some objective factor external to the defense prevented him from making the argument on appeal.  Thus, the petitioner's argument is procedurally barred.

### C. MDMA to Marijuana Ratio

The petitioner argues that the 500:1 MDMA to marijuana ratio applied by the court in calculating the petitioner's offense level was greater than necessary to serve the objectives of sentencing, and that he is entitled to be resentenced on a lower ratio.[2]  The petitioner cites United States v. McCarthy, No. 09CR1136, 2011 WL 1991146, *4 (S.D.N.Y. May 23, 2011), where the court adopted and applied a 200:1 ratio of MDMA to marijuana.  The petitioner states that he "adopts and includes the entire arguments" from the McCarthy decision.  (First Am. to Pet. under 28 U.S.C. § 2255 (Doc. No. 4) at 3).  The petitioner did not raise this claim on direct appeal.

As discussed above, claims not raised on direct appeal generally may not be raised on collateral review.  The petitioner has not argued or demonstrated that the failure to raise the issue of the MDMA to marijuana ratio on appeal was due to constitutionally ineffective representation by counsel.  To the extent the petitioner argues that the factual or legal basis for the claim was not reasonably available to counsel because McCarthy had not been decided at the time of sentencing or appeal, such an argument is without merit.  McCarthy did not change the law regarding the ratio of MDMA to marijuana to be

---

[2] As with the petitioner's argument that the court relied on inaccurate information when imposing sentence, this claim was raised in the First Amendment to Petition under 28 U.S.C. § 2255.

applied in calculating a defendant's offense level under the Sentencing Guidelines. Rather, it was a decision by one district court, in response to an argument by the defendant that the MDMA to marijuana ratio was too high, to adopt a ratio of 200:1 because the court determined that the ratio of 500:1 "would give rise to a sentence that is greater than necessary to serve the objectives of sentencing." McCarthy, 2011 WL 1991146, at *1.

As did the defendant in McCarthy, the petitioner always had the ability to argue that the 500:1 MDMA to marijuana ratio resulted in a sentence that was greater than necessary, even if a court decision articulating and supporting that argument had not yet been issued. However, the petitioner did not make that argument either during sentencing or on direct appeal, and therefore the petitioner is barred from raising that argument on collateral review.

**IV. CONCLUSION**

For the reasons set forth above, the Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. Nos. 1 and 4) is hereby DENIED. The court will not issue a certificate of appealability because the petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

The Clerk shall close this case.


---


It is so ordered.

Dated this 9th day of December 2014, at Hartford, Connecticut.

```
           _____/s/_____
               Alvin W. Thompson
            United States District Judge
```

-17-